IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MICHAEL G. WATSON** : <br> 5603 Deer Creek Falls : <br> Las Vegas, Nevada 89118 : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> **BENJAMIN ATWOOD,** : <br> [Street Address Unknown] : <br> Washington, D.C. : <br> : <br> Defendant. : | Case No.: _____ |

## COMPLAINT

Plaintiff Michael Watson ("plaintiff") hereby sues defendant Benjamin Atwood ("defendant"), and states as follows:

## PARTIES

1. Plaintiff is, and was at all times relevant hereto, an adult resident of the State of Nevada residing at 5603 Deer Creek Falls, Las Vegas, Nevada 89118.

2. On information and belief, defendant is, and was at all times relevant hereto, an adult resident of the District of Columbia.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that it is an action between citizens of different states and the matter in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000.

4. Venue is appropriate in this judicial district under 28 U.S.C. 1391(a)(2) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in the District of Columbia.

## GENERAL ALLEGATIONS COMMON TO ALL CLAIMS

5. Plaintiff is the cofounder and, until recently, the Chief Executive Officer and 50% owner of Bludline, LLC, a Nevada limited liability company ("Bludline"). Bludline was established with the goal of creating the world's greatest skin care and bronzer products, but also to work closely with the American Cancer Society and the Environmental Protection Agency to educate on dangers of UV radiation from the sun and from tanning beds. Bludline markets and sells beauty products aimed at achieving a deep, golden tan without the harmful effects of the sun. Bludline also offers unisex makeup lines that address needs for men and women.

6. Over the past several months, plaintiff had been engaged in negotiations with Lilly Ghalichi ("Ghalichi") to, among other things, distribute Bludline's bronzer products under her own name, Lilly Bronze.

7. In addition, in May 2015, plaintiff successfully negotiated an online makeup tutorial on Ghalichi's website, GhalichiGlam.com, on how to create the perfect summer bronze and contouring using Bludline's products. The on-line course was scheduled to air live on June 14, 2015, and would have resulted in considerable exposure because Ghalichi alone has 1.5 million Instagram followers as well as paid subscribers.

8. Ghalichi's team also expressed considerable interest in Bludline's products, which further led to discussions about the possibility of selling Bludline's products on Ghalichi's other website, wantmylook.com.

9. Plaintiff also had reached an arrangement with BeautyBlender, a company that sells the leading beauty product application tool in the industry, to help launch and sell its newest product, BodyBlender, a tool designed specifically to apply tanning products, such as those marketed and sold by Bludline.

10.     BeautyBlender was to post and announce Bludline's online class to its more than three hundred thousand Instagram followers, as well as on its Facebook page and other social platforms.  These levels of exposure were the first of its kind for Bludline, and would have led to considerable exposure.

11.     On or about June 11, 2015, just days before Bludline's online course was set to air, and with the obvious intention of subverting plaintiff's efforts to promote Bludline's products through a collaboration with Ghalichi and BeautyBelender, defendant sent an e-mail to Ghalichi in which he claimed, among other things, that plaintiff is a male prostitute, a narcissist with anti-social personality, a pathological liar, and a pedophile who "constantly uses his position and business relationships to take advantage of young boys, including possibly getting some of them into prostitution as well."

12.     In his June 11 e-mail correspondence to Ghalichi, defendant admits to having "an issue with [plaintiff]," and encourages Ghalichi to disassociate herself and her brand with plaintiff and Bludline, and to "consider how [her] own business partners and advertisers would view [plaintiff's] history."  Defendants also threatens to "keep extensive records of [plaintiff's] actions and who has been notified."

13.     Shortly after sending this e-mail, defendant sent a letter to Ghalichi, which was intended to "serve as official record that [Ghalichi] ha[s] been notified of the questionable history of the creator" of Bludline's products, plaintiff Michael Gabriel.  This letter further warned Ghalichi of the following:

> Should [plaintiff's] actions in the future with young boys and his products lead to law suits against him and/or his company, you are now on notice and if it is determined that your promoting his products and company after being informed of these things, this could possibly open your brand to liability as well.

3

14. After receiving these communications from defendant, Ghalichi advised plaintiff that she could not proceed with their collaborative efforts to promote Bludline's products, and canceled plaintiff's online course.

15. Likewise, BeautyBlender's business dealings with Bludline have been put on hold as a consequence of defendant's defamatory statement concerning plaintiff.

16. To avoid future harm to Bludline, plaintiff also was forced to step down as the company's CEO, and to give up his ownership interest in the company.

## COUNT I
### (Defamation/Libel)

17. Plaintiff incorporates by reference herein the allegations of paragraphs 1 through 16.

18. In his written communications to Ghalichi, defendant made the aforementioned false and defamatory statements concerning plaintiff.

19. Defendant published these statements without privilege, with the intention of harming plaintiff's personal and professional reputation, and to discourage Ghalichi and others from transacting business with plaintiff and any entity owned by plaintiff, such as Bludline.

20. Defendants' statements are actionable as libel per se because the contents of the defamatory statements impute the commission of a criminal offense for which plaintiff may be indicted and punished, and the charges involve moral turpitude and are such as will injuriously affect plaintiff's social standing.

21. As a consequence of defendant's defamatory statements, Ghalichi terminated her business arrangement with Bludline, BeautyBlender's business dealings with Bludline have been put on hold, and plaintiff was forced to step down as the company's CEO, and to give up his ownership interest in the company.

## COUNT II
### (Disparagement/Injurious Falsehood)

22. Plaintiff incorporates by reference herein the allegations of paragraphs 1 through 21.

23. In his written communications to Ghalichi, defendant knowingly made the aforementioned false and defamatory statements concerning plaintiff.

24. Defendant published these statements without privilege, with the intention of harming plaintiff's personal and professional reputation, and to discourage Ghalichi and others from transacting business with plaintiff and any entity owned by plaintiff, such as Bludline.

25. As a consequence of defendant's defamatory statements, Ghalichi terminated her business arrangement with Bludline, BeautyBlender's business dealings with Bludline have been put on hold, and plaintiff was forced to step down as the company's CEO, and to give up his ownership interest in the company.

## COUNT III
### (Interference with Prospective Business Relations)

26. Plaintiff incorporates by reference herein the allegations of paragraphs 1 through 25.

27. In his written communications to Ghalichi, defendant knowingly made the aforementioned false and defamatory statements concerning plaintiff.

28. At the time these statements were made, there existed a valid business relationship or expectancy between plaintiff, his company, Bludline, and Ghalichi, of which defendant was aware.

29. As a consequence of defendant's defamatory statements, Ghalichi terminated her business arrangement with Bludline, BeautyBlender's business dealings with Bludline have been

put on hold, and plaintiff was forced to step down as the company's CEO, and to give up his ownership interest in the company.

## COUNT IV
**(Intentional Infliction of Emotion Distress)**

30. Plaintiff incorporates by reference herein the allegations of paragraphs 1 through 29.

31. The aforesaid conduct by defendant was intentional, reckless, and in deliberate disregard of a high degree of probability that emotional distress would result to plaintiff.

32. The aforesaid conduct by defendant was extreme and outrageous and beyond the bounds of decency in society.

33. As a result of the aforesaid conduct, plaintiff has suffered, and will continue to suffer, severe and extreme emotional distress of so acute a nature that harmful physical consequences might be not unlikely to result.

WHEREFORE, plaintiff requests judgment against defendant on Counts I through IV in an amount to be proven at trial, but no less than $500,000, plus punitive damage and reasonable attorney's fees and costs. In addition, plaintiff requests the issuance of a preliminary and permanent injunction, enjoining defendant for further defaming plaintiff, from interfering with plaintiff's business relationships or expectancy, and from further causing plaintiff emotional distress.

                Respectfully submitted,

                TOBIN, O'CONNOR & EWING

By:   /s/ Ziad Haddad_____
      Ziad P. Haddad, Esq., D.C. Bar #469470
      zphaddad@tobinoconnor.com
      5335 Wisconsin Avenue, N.W., Suite 700
      Washington, D.C. 20015
      Tel: (202) 362-5900
      Fax: (202) 362-6579
      *Attorney for Michael G. Watson*

## **JURY DEMAND**

Plaintiff hereby requests a trial by jury on all claims asserted in this action.